**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                   :

MICHAEL ELLIOT KWABENA        :
OKYERE DARKO (P/K/A "OBRAFOUR"),  :
                                   :

            Plaintiff,           :

                                   :

            v.               :          **COMPLAINT**

                                   :

AUBREY DRAKE GRAHAM (P/K/A "DRAKE"), :
ALEXANDER LUSTIG, CHRISTIAN BEAU   :    JURY TRIAL DEMAND
ANASTASIOU ASTROP, DIAMANTE       :
ANTHONY BLACKMON, JOHANNES KLAHR, :
RICHARD ZASTENKER, WARNER-       :
TAMERLANE PUBLISHING CORP., WARNER :
MUSIC GROUP CORP., UMG RECORDINGS, :
INC., UNIVERSAL MUSIC PUBLISHING INC., :
UNIVERSAL MUSIC PUBLISHING AB,    :
UNIVERSAL SONGS OF POLYGRAM     :
INTERNATIONAL INC., BREMER MUSIC   :
GROUP AB, REPUBLIC RECORDS, INC., and :
OVO SOUND LLC                    :
                                   :
            Defendants.      :
---------------------------------------------------------------X

       Plaintiff Michael Elliot Kwabena Okyere Darko ("Obrafour" or "Plaintiff"), by and

through his attorneys, Aidala, Bertuna & Kamins P.C., for his Complaint against Defendants

Aubrey Drake Graham, professionally known as "Drake" ("Drake"), Alexander Lustig ("Lustig"),

Christian Beau Anastasiou Astrop ("Astrop"), Diamante Anthony Blackmon ("Blackmon"),

Johannes Klahr ("Klahr"), Richard Zastenker ("Zastenker"), Warner-Tamerlane Publishing Corp.

("Warner-Tamerlane"), Warner Music Group Corp. ("Warner"), UMG Recordings, Inc.

("Universal"), Universal Music Publishing Inc. ("Universal Publishing"), Universal Music

Publishing AB ("Universal Publishing AB"), Universal Songs Of Polygram International Inc.

("Universal-Polygram"), Bremer Music Group AB ("Bremer AB"), Republic Records, Inc.

("Republic"), and OVO Sound LLC ("OVO") (collectively, "Defendants"), alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1.     Obrafour brings this action for damages, declaratory relief, and injunctive relief pursuant to Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.* for Defendants' infringement via direct and/or indirect copying of Obrafour's copyright in Obrafour's song entitled "Oye Ohene (Remix)," (the "Copyrighted Work") which Obrafour registered with the U.S. Copyright Office on September 6, 2022 and owns full copyright in.

2.     Obrafour's claims in this action, brought pursuant to the Copyright Act, are that certain portions of the Copyrighted Work are incorporated and willfully used by the Defendants without Obrafour's permission. Specifically, in the song "Calling My Name" (the "Infringing Work"), which was released by Defendant Drake on or about June 17, 2022, contains direct copying—or "sampling"—of vocal excerpts taken from the sound recording of Obrafour's Copyrighted Work. Moreover, Defendants released the Infringing Work on June 17, 2022, despite the fact that an agent of one or more Defendants had previously contacted Obrafour seeking to obtain Obrafour's permission for the use of the Copyrighted Work in the Infringing Work. Obrafour never granted Defendants permission to use the Copyrighted Work and the Infringing Work was released mere days later.

3.     Obrafour is the owner of the right, title, and interest in the Copyrighted Work, which is the sound recording known as "Oye Ohene (Remix)." Obrafour owns the copyright, together with the right to register the statutory copyright therein. Obrafour has complied with all of the laws pertinent to the sound recording as a copyrighted work, and the subject copyright registration on the sound recording "Oye Ohene (Remix)" has been appropriately deposited and/or

registered with the U.S. Copyright Office. The Certificate of Copyright reflecting the foregoing copyright registration by Obrafour is annexed hereto as **EXHIBIT A**.

4.      The Defendants are the writers, producers, performers, record labels, entertainment companies, publishers, managers, administrators, and/or distributors of the Infringing Work. The Defendants, among other things, license, publish, and administer the Infringing Work, as well as authorize others to manufacture, distribute, sell, market, or license the Infringing Work.

5.      All of the claims asserted herein arise out of and are based on Defendants' copying, reproduction, distribution, public display, performance, sale, licensing, marketing, promotion and/or other exploitation of the Copyrighted Work without Obrafour's consent. Obrafour sues for copyright infringement under the Copyright Act, and seeks all remedies afforded to him thereunder, including preliminary and permanent injunctive relief, monetary damages, including but not limited to, actual damages, profits directly and indirectly attributable to from Defendants' infringing conduct,  statutory damages under the Copyright Act in the sum of up to $150,000.00 per infringement where such infringement commenced after the Copyrighted Work was registered with the United States Copyright Office, and other economic relief.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

7.      This court has personal jurisdiction over the enumerated Defendants because they have directed their infringing activities with respect to the Infringing Work at New York residents, and New York residents are able to purchase, download, and stream the Infringing Work and works that are derivative of the Infringing Work.

8.      Defendants have engaged in systematic and continuous business activities, including those relating to the Infringing Work, in New York. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

9.      Defendants are, at minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

10.     Drake has performed, and he and the other Defendants have authorized, organized, and promoted performances of the Infringing Work in New York.

11.     The Defendants have derived touring and recording revenues from the unauthorized and unlawful exploitation of the infringing work, including deriving substantial revenue from such exploitation in New York. They have advertised the Infringing Work to New York residents.

12.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in New York.

13.     New York has a considerable interest in adjudicating disputes wherein New York residents are the target of the harm resulting from exploitation of the Infringing Work.

14.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this judicial district, and because a substantial part of the events giving rise to the within claims occurred in this judicial district.

## PARTIES

15.     Obrafour is an individual who resides in and is a citizen of Ghana. Obrafour is a musician, singer, vocalist, songwriter, producer, entertainer, and entertainment executive who has been disseminating and performing his musical works under the pseudonym/stage name "Obrafour" to widespread public acclaim since in or about 1999. An iconic international musician

in his own right, Obrafour is widely recognized and celebrated in his home nation of Ghana, and internationally, as one of the pioneers of Ghanian hip-hop music and culture. To that end, Obrafour is amongst the most globally recognizable musicians associated with *hiplife*, which is a Ghanian musical genre that fuses hip-hop with elements of Ghanian culture and is appreciated by musical audiences not only in West Africa, but worldwide. Obrafour is further engaged in, among other things, conducting the business of publicly performing, distributing, selling, marketing, licensing, promoting, and/or otherwise disseminating his musical works.

16.     Drake resides in Los Angeles County, California. Among other ventures, Drake is a singer, songwriter, and hip-hop artist who releases music under the stage name Drake. Drake caused the public release of the Infringing Work on June 17, 2022, and has since caused the Infringing Work to be widely published, distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Drake has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

17.     Defendant OVO is a California limited liability company whose principal and sole member is Drake. OVO functions as, among other things, an independent record company owned and operated by Drake. OVO is one of the record companies behind the Infringing Work, and has been responsible for, among other things causing the Infringing Work to be created, widely published, distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. OVO has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. OVO has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

18.     Defendant Republic is a corporation organized, existing, and doing business in New York. At all times relevant, Republic was (and continues to be) engaged in, among other things, the business of recording, publishing, distributing, licensing, displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting music released by Drake and/or OVO, including the Infringing Work. Republic has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. Republic has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

19.     Defendant Universal is an American global music corporation organized under laws of Delaware, with its principal place of business and global corporate headquarters located in Santa Monica, California. It is also known as and does business interchangeably as "UMG" and "Universal Music Group." Universal also maintains a U.S. headquarters at 1755 Broadway, New York, New York.  Universal was (and continues to be) engaged in, among other things, the business of recording, publishing, distributing, licensing, displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting the Infringing Work. Republic has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. Universal is the parent company of Republic and Universal Publishing, as well as the indirect parent company of Defendants Universal-Polygram, Universal Publishing AB, and Bremer AB. Universal has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

20.     Defendant Universal Publishing is a music publishing corporation organized under the laws of Delaware and registered and authorized to do business in New York, with offices located in New York, New York. Universal Publishing was (and continues to be) facilitating and

engaged in, among other things, the business of recording, publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting the Infringing Work. Universal Publishing has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

21.     Upon information and belief, Defendant Universal Publishing AB is incorporated and organized under the laws of Sweden and is a subsidiary of Universal Publishing. Universal Publishing AB was (and continues to be) facilitating and engaged in, among other things, the business of recording, publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting the Infringing Work. Universal Publishing AB has caused itself to be publicly credited as one of the entities that control a publishing interest in the Infringing Work. At all relevant times, Universal Publishing AB was (and continues to be) responsible for management and administration activities with respect to Co-Defendant Bremer AB. Universal Publishing AB has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

22.     Upon information and belief, Defendant Bremer AB is a music publishing entity incorporated and organized under the laws of Sweden. At all times relevant, Bremer AB was (and continues to be) facilitating and engaged in, among other things, the business of publishing, administering, distributing, licensing, administering displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting the Infringing Work. Bremer AB has caused itself to be publicly credited as one of the entities that control a publishing interest in the Infringing Work. Bremer AB has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

23.     Defendant Universal-Polygram is incorporated and organized under the laws of Delaware. Universal-Polygram was (and continues to be) facilitating and engaged in, among other things, the business of publishing, administering, distributing, licensing, administering displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting musical works controlled by Co-Defendant Universal Publishing and/or Co-Defendant Universal Publishing AB, including the Infringing Work. Universal-Polygram has caused itself to be publicly indicated as the "Copyright Manager" of Universal Publishing AB for purposes of a publishing interest that Universal Publishing AB claims to control in the Infringing Work. Universal-Polygram has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

24.     Defendant Warner-Tamerlane is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Warner-Tamerlane was (and continues to be) engaged in, among other things, the business of publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying and/or otherwise exploiting the Infringing Work. Warner-Tamerlane has caused itself to be publicly credited as one of the entities or persons that control a publishing interest in the Infringing Work. Warner-Tamerlane has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

25.     Defendant WMG is a major global music corporation organized under the laws of Delaware with its principal offices in New York, New York. WMG is the parent company of Co-Defendant Warner-Tamerlane, and WMG has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or

otherwise exploited to the public. WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

26.     Upon information and belief, Defendant Lustig is an individual who resides in Canada. Among other ventures, Lustig is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Lustig has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Lustig has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

27.     Upon information and belief, Defendant Astrop is an individual who resides in the United Kingdom. Among other ventures, Astrop is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Astrop has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Astrop has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

28.     Upon information and belief, Defendant Blackmon is an individual who resides in the State of Hawaii. Among other ventures, Blackmon is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track

that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Blackmon has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Blackmon has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

29.     Upon information and belief, Defendant Klahr is an individual who resides in Sweden. Among other ventures, Klahr is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Klahr has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Klahr has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

30.     Upon information and belief, Defendant Zastenker is an individual who resides in Sweden. Among other ventures, Zastenker is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Zastenker has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon

information and belief, Zastenker has derived substantial revenues and/or profits from the exploitation of the Infringing Work**.**

## FACTUAL ALLEGATIONS

### I.   Plaintiff and his Copyrighted Work

31.     Obrafour has enjoyed a successful and celebrated career engaged in, among other things, the business of writing, producing, creating, recording, performing, and releasing music internationally under the stage name "Obrafour." Obrafour's professional career in that regard began when he released his debut album entitled "Pae Mu Ka" in 1999 to widespread acclaim. Widely regarded as one of the most notable and influential musicians in the history of Ghanian hip-hop music and culture, Obrafour has released six full-length albums and over thirteen singles since 1999, and has received numerous accolades, awards, and nominations for his work.

32.     One of the albums created and released by Obrafour is entitled "Nte Tee Pa," which was initially published and released for sale and distribution on the Ghanian market by Obrafour on compact disc on or about June 23, 2003. One of the songs included and released on the album Nte Tee Pa is the Copyrighted Work, entitled "Oye Ohene (Remix)," which Obrafour wrote, created, and recorded in 2003. Nte Tee Pa was well-received, and among other accolades, won the award for "Best Album of the Year" at the 2004 Ghana Music Awards UK. Moreover, the Copyrighted Work has remained one of the most popular songs on Nte Tee Pa, and one of the most popular songs in Obrafour's overall music catalogue.

33.     In connection with his release of Nte Tee Pa, in 2003 Obrafour registered his exclusive copyrights in and to the Copyrighted Work "Oye Ohene (Remix)" under Ghanian copyright law and procedure. Annexed hereto as **EXHIBIT B** is an official Confirmation of Copyright letter, dated October 18, 2022, from GHAMRO (Ghana Music Rights Organization),

the agency responsible for administering and enforcing copyright and copyright law in Ghana. The letter confirms Obrafour's 2003 registration and his status as the duly registered and exclusive owner of the Copyrighted Work under Ghanian law.

34.     In addition to registering his exclusive copyright in and to the Copyrighted Work in Ghana, Obrafour also registered his exclusive copyright in and to the Copyrighted Work in the United States. Obrafour did so in accordance with American copyright law and procedure, as confirmed in the United States Copyright Office Certificate of Registration, effective September 6, 2022, annexed hereto as **EXHIBIT A**.

## II.     Defendants' Infringing Conduct

35.     On June 8, 2022, Obrafour received an email from an individual named Deborah Mannis-Gardner ("Mannis-Gardner"), which bore the following email subject line:

> **Drake "Darkness" (working title)" contains samples from "Oye Ohene" Ft Tinny written and performed by Obrafour.**

A true and correct copy of this June 8, 2022 email from Mannis-Gardner to Obrafour (the "June 8, 2022 Clearance Email") is annexed hereto as **EXHIBIT C**.

36.     In the June 8, 2022 Clearance Email, Mannis-Gardner wrote to Obrafour that she was "**currently working on a sample clearance for Republic recording artist Drake.**" Ex. C. Mannis-Gardner further wrote that "**Drake *has used samples* from the above referenced song,**" identifying the song in which Drake "*has used*" such "*samples*" as a song entitled **"Darkness (working title)."** *Id.* (emphasis added). Continuing, Mannis-Gardner wrote to Obrafour that "***we are seeking consent for both the master rights and publishing rights,***" a statement she immediately followed with a hyperlink that, when clicked, automatically directs one to a streaming version of the Copyrighted Work that has been available on Spotify since in or about 2018. *See id.* (emphasis added). After linking to the Copyright Work on Spotify, Mannis-Gardner further wrote

that "**the *rights* that *we* are looking to secure include the *right to use* this *sample* in *our new composition* in all audio configurations, now known or hereinafter devised, throughout the world, in perpetuity including music video rights and digital downloads and ring tones/ring tunes.**" *Id.* (emphasis added).

37.     Mannis-Gardner sent the June 8, 2022 Clearance Email at the behest and on behalf of the Defendants, as an agent retained by Defendants for purposes of obtaining sample clearances. Upon information and belief, the Drake song she identified therein as "Darkness (working title)"— which she stated contained a sample of the Copyrighted Work—is the song that was ultimately released with the song title "**Calling My Name,**" *i.e.*, the Infringing Work.

38.     On June 13, 2022, Obrafour had not yet responded to the June 8, 2022 Clearance Email, and Mannis-Gardner sent Obrafour a follow-up email simply stating, "**Hi confirming you received this email thanks [sic]**" (the "June 13, 2022 Clearance Email"). The June 13, 2022 Clearance Email is annexed hereto as **EXHIBIT D**.

39.     On June 17, 2022, a fourteen-song studio album entitled "Honestly, Nevermind" by Drake was released by Defendants Drake, OVO, Republic, and Universal, only hours after Drake and OVO announced the album on social media. In doing so, Drake, OVO, Republic, and Universal released "Honestly, Nevermind" pursuant to an increasingly prevalent 'surprise' model for high-profile commercial album releases, whereby an album is suddenly released by 'surprise'—*i.e.*, either with little or no notice or promotion to the consuming public. This 'surprise' release model stands in contrast to the traditional model for album releases, which typically involves a period of promotion and marketing—or a "promo run"—leading up to the album's official, announced release date. The 'surprise' album release approach is designed to, among other

things, create a sense of excitement and urgency among fans, who may feel compelled to buy or stream the album immediately in order to be among the first to hear it.

40.    Obrafour had not yet responded to the June 8, 2022 Clearance Email or the follow-up June 13, 2022 Clearance Email at the point when Drake's "Honestly, Nevermind" album was released on June 17, 2022. Nonetheless, the Infringing Work is one of the songs appearing on the "Honestly, Nevermind" album, as released to the world by 'surprise' on June 17, 2022.

41.    The Infringing Work appears on "Honestly, Nevermind" as the song entitled "Calling My Name," which prominently features an audio phrase taken directly from the sound recording of the Copyrighted Work. Specifically, the Infringing Work directly incorporates a vocal phrase that is audible at the immediate outset of the sound recording of the Copyrighted Work (the "Sampled Phrase"). Upon information and belief, the Infringing Work had never been released, performed, displayed, announced, or otherwise made publicly listenable or accessible prior to the 'surprise' release of the "Honestly, Nevermind" album.

42.    In the Sampled Phrase from the Copyrighted Work, a male voice with a distinct tone and accent is heard energetically repeating the following phrase: "Killer cut, blood, killer cut." The phrase incorporates use of slang terms universally associated with hip-hop culture. In this lexicon, the Sampled Phrase can be understood as approximately saying, "Great song, brother, great song."[1]

43.    The copying of the Sampled Phrase in the Infringing Work is so direct in nature that the audio of the Sampled Phrase heard in the Infringing Work contains little or no audible manipulation, processing, or other alteration to its original character as heard in the Copyrighted

---

[1] "Killer," used in this context, means "great." A "cut" is a colloquial way of referring to a song or piece of music, deriving from the analogue era of music recording where music was primarily recorded to reels of tape that would be cut.  "Blood" is a term of endearment or affection meaning "brother."

Work. This lack of audible alteration to the audio of the Sampled Phrase heard in the Infringing Work is notable to the extent that it is generally atypical for a song to sample audio from another song without at least some audible manipulation, processing, or other alteration to the basic character, speed, and/or pitch of the sampled audio.

44.     Upon release, the "Honestly, Nevermind" album was noted for its adoption of sonics and musical styles associated with the genres of dance, house, and club music, which represented a sharp stylistic departure from the hip-hop and R&B sonics that dominated previous Drake releases. As such, the album has garnered widespread critical acclaim.

45.     For example, the New York Times's Jon Caramanica wrote, "A small marvel of bodily exuberance – appealingly weightless, escapist and zealously free. An album of entrancing club music, it's a pointed evolution toward a new era for one of music's most influential stars." Jon Caramanica, *Drake Rebuilt Hip-Hop in His Image. Now He Wants You to Dance*, N.Y. Times, (Jun. 19, 2022).[2] Variety's Alex Swhear wrote, "As a standalone Drake album, it's deeply refreshing, and a dose of vibrant pop likely to reverberate through the remainder of the summer." Alex Swhear, *Drake Comes Back From Dreary 'Lover Boy' With Refreshing Dance Music of 'Honestly, Nevermind': Album Review*, Variety, (Jun. 17, 2022).[3] From a commercial standpoint, "Honestly, Nevermind" and all of its constituent songs did indeed "reverberate through the remainder of the summer."

46.     Upon its release on June 17, 2022, "Honestly, Nevermind" instantly debuted atop numerous international charts, including the U.S. Billboard, Billboard 200 chart. It also debuted in the top-ten on numerous other charts internationally. "Honestly, Nevermind" generated

---

[2] Accessible at: https://www.nytimes.com/2022/06/19/arts/music/drake-honestly-nevermind-review.html .
[3] Accessible at: https://variety.com/2022/music/album-reviews/drake-honestly-nevermind-album-review-1235297499/.

approximately 250.23 million on-demand music streams in its first week alone. By the close of 2022, "Honestly, Nevermind" had occupied a peak position of number one on no less than eight separate weekly charts throughout the globe, and had occupied peak positions of number two or three on no less than eleven separate weekly charts throughout the globe. "Honestly, Nevermind" ended 2022 as the top-charting album of the year on the Billboard U.S. Top Dance/Electronic Albums chart.

47.     In the mere 304 total days that have elapsed since "Honestly, Nevermind" was released, "Honestly, Nevermind" has, among other things, generated over one billion streams on Spotify, and has never left the worldwide top-fifty albums garnering the most daily streams on Apple Music.

48.     As part of the massive international commercial success generated by the "Honestly, Nevermind" album, the Infringing Work has seen immense commercial success in its own right. Specifically, upon the "Honestly, Nevermind" album's debut, the Infringing Work immediately charted as a top single appearing on numerous charts associated with numerous markets throughout the globe.

49.     For instance, the Infringing Work remained in the top twenty-five songs appearing on the weekly USA Singles Top 40 chart for a period of eight consecutive weeks following its debut, at one point occupying a peak position as the number twelve top weekly single in the U.S. Additionally, the Infringing Work charted on the Canada Top 20 weekly singles chart at a peak position of fourteen. In total, the Infringing Work has to date spent an aggregate period of twenty-five total weeks appearing on one or more of four separate charts for top-forty singles in multiple markets throughout the globe.

50.     To date, over the mere 304 days that have elapsed since the Infringing Work was released, the Infringing Work has already been streamed over 4.1 million times on YouTube, streamed over 47,442,160 times on Spotify, and streamed tens of millions of times on Apple Music.

51.     In addition to generating enormous sums of global streams and sales across numerous platforms, the Infringing Work has, also been exploited by the Defendants via other means, including live performance.

52.     Though the exact extent to which Defendants participated in live performances of the Infringing Work may not be fully ascertainable by Obrafour until discovery in this action is complete, the Infringing Work has, upon information and belief, been incorporated and performed live during no less than six live concerts given by Drake over the 304-day period that has elapsed between the Infringing Work's release. Upon information and belief, each of these six live performances of the Infringing Work specifically included and consisted of unauthorized uses of the Sampled Phrase from Obrafour's Copyrighted Work.

53.     The chart below delineates the six live concerts during which Defendants have caused the Infringing Work to be publicly performed, disseminated, and exploited.

| Concert | Date and Location |
|---|---|
| Estéreo Picnic Colombia 2023 | March 24, 2023<br>Centro de Eventos Briceño 18, Briceño, Colombia |
| Lollapalooza Chile 2023 | March 18, 2023<br>Parque Bicentenario de Cerrillos, Santiago, Chile |
| Lollapalooza Argentina 2023 | March 17, 2023<br>Hipódromo de San Isidro, San Isidro, Argentina |
|  |  |

| Drake at the Apollo Theater | January 22, 2023<br>Apollo Theater, New York, NY, USA |
|---|---|
| Drake at the Apollo Theater | January 21, 2023<br>Apollo Theater, New York, NY, USA |
| October World Weekend 2022 | August 6, 2022<br>Budweiser Stage, Toronto, ON, Canada |

54.     It is not yet known to Obrafour precisely how many concert tickets were sold in connection with the above six concerts, or how much gross revenue was generated, as the box office data is not publicly available. However, as the parties who possess and/or control and/or administrate the writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues, profits, and benefits derived from the concerts, particularly in light of the fact that Drake was the headlining performance at each of the concerts, the concerts commanded a significant ticket price, and were sold out or near capacity.

55.     Furthermore, Defendants OVO, Republic, Universal, Universal Publishing, Universal Publishing AB, Universal-Polygram, Bremer Music AB, WMG, and Warner-Tamerlane (collectively the "Label Defendants") have individually and jointly been responsible for the continuing administration, display, reproduction, distribution, performance, sale, marketing, promotion, and/or other exploitation of the Infringing Work. The Label Defendants' joint and individual infringing conduct in this regard extends, upon information and information and belief, to conduct intended to facilitate aid, abet, and encourage the continuing infringement of Obrafour's full ownership of the copyright in the Copyrighted Work, including, but not limited to, the various examples infringing conduct set forth above.

56.     For instance, as just one example of the Label Defendants' role in carrying out and furthering the infringement of Obrafour's copyright in the Copyrighted Work, in order to conceal the existence of a wrongful and unauthorized use of Obrafour's Copyrighted Work, the Label Defendants placed, or caused to be placed, label copy on digital and physical formats of the Infringing Work inaccurately listing Defendants Drake, Lusting, Astrop, Blackmon, Klahr Klahr, and Zastenker (collectively, the "Individual Defendants") as sole writers of the Infringing Work; inaccurately listing OVO, Republic, and Universal as sole owners of a valid phonographic copyright that purportedly exists in the Infringing Work; and informing Performing Rights Organizations (PROs)—including ASCAP and BMI—of an inaccurate and incomplete list of songwriters, publishers, and administrators of rights associated with the Infringing Work, omitting Obrafour as a writer or publisher and instead indicating the Individual Defendants as sole writers and the Label Defendants themselves as sole stakeholders, publishers, and/or administrators.

57.     The Label Defendants are individually and jointly responsible for the administration and/or distribution of the various streams of revenue derived from conduct that continues to infringe upon Obrafour's full ownership of the copyright in and to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct set forth above.

58.     The Individual Defendants, as the parties credited with writing the Infringing Work, have also continuously derived significant financial and professional benefits directly resulting from conduct that continues to infringe upon Obrafour's full ownership of the copyright in and to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct set forth above.

59.     As a direct result of the streaming, licensing, sale, derivative streaming/licensing/sale/exploitation, synchronization licensing, live performance, reproduction,

marketing, promotion, and/or other exploitation of the Infringing Work, all of the Defendants—as the credited songwriters, performers, copyright owners, publishers and/or administrators of the Infringing Work—have wrongfully benefited, and continue to wrongfully benefit, from their wrongful exploitation of the Infringing Work despite the fact that it includes an unauthorized use of Obrafour's Copyrighted Work.

60. Further, pursuant to the takedown policies of Spotify, YouTube and Apple Music, all of the Defendants have possessed the ability to cause the Infringing Work to be taken down from YouTube, Spotify, and Apple Music on the basis that the Infringing Work violates each platform's terms of services and infringes the rights of others by including the unauthorized use of the Copyrighted Work. All of the Defendants possess such takedown ability, pursuant to the takedown policies  of Spotify, YouTube, and Apple Music, because all of the Defendants are either: (a) parties with registered writing and/or publishing interests in and to the Infringing Work; and/or (b) are major parent record corporations, distribution companies, and/or publishing companies who are responsible for the administration and/or management of the Infringing Work and the registered writing and/or publishing interest therein.

61. The foregoing sets forth only a portion of Defendants' infringing conduct that has been reasonably discoverable and ascertainable to Obrafour within the mere 304-day period that has elapsed since the Defendants' release of the Infringing Work on June 17, 2022.

62. As a result of Defendants' conduct described above, Obrafour has been directly damaged, and is continuing to be damaged, by Defendants' willful, unauthorized, and infringing reproduction, publication, promotion, performance, distribution, licensing, public display, sale and/or exploitation of the Copyrighted Work. Defendants continue to engage in infringement, despite acknowledging that they needed to secure rights and authorization from Obrafour in order

to use Obrafour's Copyrighted Work, and Defendants never received such authorization. Defendants have never accounted to, credited, or otherwise compensated Obrafour for their unauthorized use of the Copyrighted Work.

## CLAIMS FOR RELIEF

### FIRST COUNT
**(DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS PURSUANT TO 17 U.S.C. § 101, *et seq*.)**

63.     Obrafour repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

64.     Obrafour is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work "Oye Ohene (Remix)."

65.     The Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Obrafour's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

66.     The Defendants did not seek or receive permission to copy and/or incorporate any portion of the Copyrighted Work into the Infringing Work, "Calling My Name."

67.     The Defendants' conduct has at all times been knowing, willful, and with complete disregard for Obrafour's rights.

68.     As a direct and/or proximate cause of the Defendants' wrongful conduct, Obrafour has been irreparably harmed.

69.     The Infringing Work copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work.

70.     Specifically, the Infringing Work directly copies distinctive and important vocal elements of the composition and performance embodied in the Copyrighted Work.

71.     The central inclusion of the foregoing important vocal elements from the Copyrighted Work in the Infringing Work has greatly enhanced the musical and financial value of the Infringing Work.

72.     From the date of the creation of the Infringing Work, all of the Defendants have infringed Obrafour's copyright interest in and to the Copyrighted Work including: (i) by directly copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Work at radio, live concerts, and on film, video, television, and otherwise; (ii) by authorizing and/or playing a role in the facilitation of the reproduction, distribution and sale of records and digital downloads containing the Infringing Work via the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (iii) by substantially copying and participating in the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in, administering, and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through unauthorized uses of the Copyrighted Work in and as part of the Infringing Work, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including via radio, streaming services, concerts, film, video, television, and/or otherwise.

73.     Obrafour has received no songwriter credit and no copyright ownership interests in and for any exploitations of the Infringing Work or any of the works associated with the Infringing Work.

74.     The infringement by the Defendants has been, and continues to be, willful and knowing.

75.     With knowledge of the infringement and the need to procure authorization from Obrafour for the use of Obrafour's Copyrighted Work, the Defendants have induced, caused, or materially contributed to the infringing conduct of others with respect to the Copyrighted Work, such that Defendants should be found to be contributorily liable.

76.     The Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that the Defendants should be found vicariously liable.

77.     The infringement is continuing, as the Infringing Work continues to be sold, licensed, performed, displayed, merchandised, and/or otherwise used and/or exploited by the Defendants or their agents.

78.     As a direct and proximate result of the conduct of the Defendants, Obrafour has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, while Defendants have profited from their infringement in an amount of millions of dollars, to be determined at trial.

79.     Pursuant to 17 U.S.C. § 504(b), Obrafour is entitled to damages including the substantial profits that the Defendants have derived from the infringement of Obrafour's Copyrighted Work, to be determined at trial.

80.     In the alternative, pursuant to 17 U.S.C. § 504(c), Obrafour is entitled to the maximum statutory damages of $150,000 per infringement, to the extent that Defendants' willful and continuing infringement occurred after Obrafour's fully owned copyrights in and to the

Copyrighted Work were registered and occurred after the Copyrighted Work had already been published and made widely publicly accessible.

81.     Obrafour is entitled to his costs, including reasonably attorneys' fees, pursuant to 17 U.S.C. § 505.

82.     Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Obrafour irreparable injury that cannot be fully compensated or measured in monetary terms. Obrafour has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Obrafour is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work, including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

## RELIEF REQUESTED

**WHEREFORE**, Obrafour respectfully requests that judgment be entered against the Defendants, as follows:

a.     A declaration that Defendants have willfully infringed Obrafour's Copyrighted Work in violation of the Copyright Act;

b.     A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

c.     A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Obrafour's rights protected by the Copyright Act;

d.      An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Defendants, including all profits and damages directly and indirectly arising from exploitation of the Copyrighted Work, domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

1.   Record sales;
2.   Downloads;
3.   Ringtones;
4.   Ringback tones;
5.   Public performance revenues;
6.   Digital revenue;
7.   Streaming revenue;
8.   Synchronization licensing;
9.   Merchandising;
10.  Public appearances;
11.  Endorsements;
12.  Sponsorships;
13.  Spokesperson work;
14.  Touring revenue;
15.  Advertising revenue;
16.  Appearance fees;
17.  Name and likeness income and increase in value;
18.  Rights of publicity income and increase in value;
19.  Increased value in all Defendants' publishing and/or record company and/or companies;
20.  Increased value of all Defendants' catalogues;
21.  Increased value of music publishing and/or record royalties and rights;
22.  Increased value of social media rights, accounts and value;
23.  Increased goodwill;
24.  Promotional value;
25.  Increased value of royalty rate for record deals;
26.  Increased value in distribution deals, negotiating power and reduction in costs;
27.  Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;
28.  Value of obtaining better terms for record company advances and terms and multi-record deals;
29.  Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants Drake, Lusting, Astrop, Blackmon, Klahr, and Zastenker;
30.  Increased value in negotiating 360 deals with record companies and/or publishers;

31.     Sheet music sales and sheet folio income;

32.     Any and all music publisher income;

33.     Any and all record master income;

34.     Any and all record income;

35.     Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

36.     Any and all producer royalty income;

37.     Any and all arrangement income;

38.     Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

39.     Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

40.     Any and all income from any society to which any Defendant belongs or joins in the future;

41.     Any and all income and/or residuals from SAG-AFTRA;

42.     Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

43.     Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service.

e.     In the alternative, an award of statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;

f.     An award of compensatory and special damages, to be determined at trial;

g.     An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

h.     For pre-judgment and post-judgment interest according to law, as applicable;

i.     For damages, in aggregate, in an amount not less than $10,000,000, and/or to be determined at trial; and

j.     For such other and further relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
       April 18, 2023

Respectfully submitted,

**AIDALA, BERTUNA & KAMINS, P.C.**

By:    *Imran H. Ansari*

Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com