# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

MICHAEL ELLIOT KWABENA
OKYERE DARKO (P/K/A "OBRAFOUR"),

        Plaintiff,

    v.

AUBREY DRAKE GRAHAM (P/K/A "DRAKE"),
ALEXANDER LUSTIG, CHRISTIAN BEAU
ANASTASIOU ASTROP, DIAMANTE
ANTHONY BLACKMON, JOHANNES KLAHR,
RICHARD ZASTENKER, WARNER-
TAMERLANE PUBLISHING CORP., WARNER
MUSIC GROUP CORP., UMG RECORDINGS,
INC., UNIVERSAL MUSIC PUBLISHING INC.,
UNIVERSAL MUSIC PUBLISHING AB,
UNIVERSAL SONGS OF POLYGRAM
INTERNATIONAL INC., BREMER MUSIC
GROUP AB, REPUBLIC RECORDS, INC., and
OVO SOUND ~~LLC~~CA,

        Defendants.

------------------------------------------------------------- X

Civil Action No. 23-cv-03232-JMF

**FIRST AMENDED COMPLAINT**

JURY TRIAL DEMAND

Plaintiff Michael Elliot Kwabena Okyere Darko ("Obrafour" or "Plaintiff"), by and through

his attorneys, Aidala, Bertuna & Kamins P.C., for his Complaint against Defendants Aubrey Drake

Graham, professionally known as "Drake" ("Drake"), Alexander Lustig ("Lustig"), Christian Beau

Anastasiou Astrop ("Astrop"), Diamante Anthony Blackmon ("Blackmon"), Johannes Klahr

("Klahr"), Richard Zastenker ("Zastenker"), Warner-Tamerlane Publishing Corp. ("Warner-

Tamerlane"), Warner Music Group Corp. ("Warner"), UMG Recordings, Inc. ("Universal"),

Universal Music Publishing Inc. ("Universal Publishing"), Universal Music Publishing AB ("Universal

Publishing AB"), Universal Songs Of Polygram International, Inc. ("Universal-Polygram"), Bremer

Music Group AB ("Bremer AB"), Republic Records, Inc. ("Republic"), and OVO Sound ~~LLC~~CA ("OVO~~") (~~")(collectively, "Defendants"), alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

**PRELIMINARY STATEMENT**

1. Obrafour, a Ghanian national, brings this action for damages, declaratory relief, and injunctive relief pursuant to Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq*. for Defendants' infringement via direct and/or indirect copying of Obrafour's copyright in Obrafour's song entitled "Oye Ohene (Remix~~).")~~" (the "Copyrighted Work~~")~~"), which Obrafour registered with the U.S. Copyright Office on September 6, 2022 and owns full copyright in under the laws of Ghana.

2. Obrafour's claims in this action, brought pursuant to the Copyright Act, are that certain portions of ~~the~~his Copyrighted Work are ~~incorporated~~directly copied and willfully used by the Defendants without Obrafour's permission. Specifically, ~~in~~ the song "Calling My Name" (the "Infringing Work"), which was released by Defendant Drake on or about June 17, 2022, contains direct copying—or "sampling"—of vocal excerpts taken from the sound recording of Obrafour's Copyrighted Work. Moreover, Defendants released the Infringing Work on June 17, 2022, despite the fact that an agent of one or more Defendants had previously contacted Obrafour seeking to obtain ~~Obrafour's~~ permission from Obrafour for the use of the Copyrighted Work in the Infringing Work. Obrafour never granted Defendants permission to use the Copyrighted Work, and the Infringing Work was released anyway mere days later.

3. Obrafour is the owner of the right, title, and interest in the Copyrighted Work, which is the sound recording known as "Oye Ohene (Remix)." Obrafour owns the copyright, together with

the right to register the statutory copyright therein. Obrafour has complied with all of the laws pertinent to the sound recording as a copyrighted work, and the subject copyright registration on the sound recording "Oye Ohene (Remix)" has been appropriately deposited and/or registered with the U.S. Copyright Office. The Certificate of Copyright reflecting the foregoing copyright registration by Obrafour is annexed hereto as **EXHIBIT A**.

4.     The Defendants are the writers, producers, performers, record labels, entertainment companies, publishers, managers, administrators, and/or distributors of the Infringing Work. The Defendants, among other things, license, publish, ~~and~~ administer, and exploit the Infringing Work, as well as authorize others to manufacture, distribute, sell, market, ~~or~~ license, or exploit the Infringing Work.

**5.**     All of the claims asserted herein arise out of and are based on Defendants' copying, reproduction, distribution, public display, performance, sale, licensing, marketing, promotion and/or other exploitation of the Copyrighted Work without Obrafour's consent. Obrafour sues for copyright infringement under the Copyright Act, and seeks all remedies afforded to him thereunder, including preliminary and permanent injunctive relief, monetary damages, including but not limited to, actual damages, profits directly and indirectly attributable to from Defendants' infringing conduct and exploitation of the Infringing Work,  statutory damages under the Copyright Act in the sum of up to $150,000.00 per infringement where such infringement commenced after the Copyrighted Work was registered with the United States Copyright Office, and other economic relief.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

7.     This court has personal jurisdiction over the enumerated Defendants because they have directed their infringing activities with respect to the Infringing Work at New York residents, and New York residents are able to purchase, download, and stream the Infringing Work and works that are derivative of the Infringing Work.

8.     Defendants have engaged in systematic and continuous business activities, including those relating to the Infringing Work, in New York. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

9.     Defendants are, at minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

10.     Drake has performed, and he and the other Defendants have authorized, organized, and promoted performances of the Infringing Work in New York.

11.     The Defendants have derived touring and recording revenues from the unauthorized and unlawful exploitation of the ~~infringing work~~Infringing Work, including deriving substantial revenue from such exploitation in New York. They have advertised and promoted the Infringing Work to New York residents.

12.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in New York.

13.     New York has a considerable interest in adjudicating disputes wherein New York residents are the target of the harm resulting from exploitation of the Infringing Work.

14.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c)), and 1400(a) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this judicial district, and because a substantial part of the events giving rise to the within claims occurred in this judicial district.

## PARTIES

15.     Obrafour is an individual who resides in and is a citizen of Ghana. Obrafour is a musician, singer, vocalist, songwriter, producer, entertainer, and entertainment executive who has been disseminating and performing his musical works under the pseudonym/stage name "Obrafour" to widespread public acclaim since in or about 1999. An iconic international musician in his own right, Obrafour is widely recognized and celebrated in his home nation of Ghana, and internationally, as one of the pioneers of Ghanian hip-hop music and culture. To that end, Obrafour is amongst the most globally recognizable musicians associated with *hiplife*, which is a Ghanian musical genre that fuses hip-hop with elements of Ghanian culture and is appreciated by musical audiences not only in West Africa, but worldwide. Obrafour is further engaged in, among other things, conducting the business of publicly performing, distributing, selling, marketing, licensing, promoting, and/or otherwise disseminating -his musical works.

16.     Defendant Drake resides in Los Angeles County, California. Among other ventures, Drake is a singer, songwriter, and hip-hop artist who releases music under the stage name Drake. Drake caused the public release of the Infringing Work on June 17, 2022, and has since caused the Infringing Work to be created, widely published, distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Drake has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

5

17.     Defendant OVO is a California limited liability company an Ontario, Canada general partnership whose principal and sole member is Drake. OVO functions as, among other things, an independent record company owned and operated by Drake. Upon information and belief, OVO is one of the record companies behind the Infringing Work, and has been responsible for, among other things, causing the Infringing Work to be created, widely published, distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. OVO has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. OVO has derived substantial revenues and/or profits from the exploitation of the Infringing Work. At all relevant times herein mentioned and upon information and belief, Defendant OVO was responsible for contractual and fiscal elements involved in the management, production, and distribution of music-sound recordation, music-video recordation, music-sound production, music-video production, live tour performances, live media performances, and arrangements that were conducted or performance in connection with the Infringing Work. Furthermore, at all relevant times herein mentioned, upon information and belief, Defendant OVO was responsible for, assisted with, engaged in, collaborated on, and/or participated in the management, control, governance, overseeing, and/or supervision of Defendant Drake's career, including the creation, publication, distribution, performance, licensing, display, marketing, promotion, reproduction, copying, and/or other exploitation of the Infringing Work.

18.     Defendant Republic is a corporation organized, existing, and doing business in New York. At all times relevant, Republic was (and continues to be) engaged in, among other things, the business of recording, publishing, distributing, licensing, displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting music released by Drake and/or other artists

affiliated with OVO, including the Infringing Work. Republic has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. Republic has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned, upon information and belief, Defendant Republic was responsible for, assisted with, engaged in, collaborated on, and/or participated in the management, control, governance, overseeing, and/or supervision of Defendant Drake's career, including the creation, publication, distribution, performance, licensing, display, marketing, promotion, reproduction, copying, and/or other exploitation of the Infringing Work.

19.     Defendant Universal is an American global music corporation organized under laws of Delaware, with its principal place of business and global corporate headquarters located in Santa Monica, California. It is also known as and does business interchangeably as "UMG" and "Universal Music Group." Universal also maintains a U.S. headquarters at 1755 Broadway, New York, New York. Universal was (and continues to be) engaged in, among other things, the business of recording, publishing, distributing, licensing, displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting the Infringing Work. ~~Republic~~Universal has caused itself to be publicly credited as one of the holders of a purported "Copyright" and a purported "Phonographic Copyright" associated with the Infringing Work. Universal is the parent company of Republic and Universal Publishing, as well as the indirect parent company of Defendants Universal-Polygram, Universal Publishing AB, and Bremer AB. Universal has derived substantial revenues and/or profits from the exploitation of the Infringing Work. At all relevant times herein mentioned and upon information and belief, Defendant Universal is/was the parent company/subsidiary/subdivision of all relevant

Universal subsidiaries, subdivisions, and/or departments ultimately responsible for contractual and fiscal elements involved in the management, production, and distribution of music-sound recordation, music-video recordation, music-sound production, music-video production, live tour performances, live media performances, and arrangements that were conducted or performance in connection with the Infringing Work.

20.      Defendant Universal Publishing is a music publishing corporation organized under the laws of Delaware and registered and authorized to do business in New York, with offices located in New York, New York. Universal Publishing was (and continues to be) facilitating and engaged in, among other things, the business of recording, publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting the Infringing Work. Universal Publishing has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

21.      Upon information and belief, Defendant Universal Publishing AB is incorporated and organized under the laws of Sweden and is a subsidiary of Universal Publishing. Universal Publishing AB was (and continues to be) facilitating and engaged in, among other things, the business of recording, publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting the Infringing Work. Universal Publishing AB has caused itself to be publicly credited as one of the entities that control a publishing interest in the Infringing Work. At all relevant times, Universal Publishing AB was (and continues to be) responsible for management and administration activities with respect to Co-Defendant Bremer AB. Universal Publishing AB has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

22.     Upon information and belief, Defendant Bremer AB is a music publishing entity incorporated and organized under the laws of Sweden. At all times relevant, Bremer AB was (and continues to be) facilitating and engaged in, among other things, the business of publishing, administering, distributing, licensing, administering displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting the Infringing Work. Bremer AB has caused itself to be publicly credited as one of the entities that control a publishing interest in the Infringing Work. Bremer AB has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

23.     Defendant Universal-Polygram is incorporated and organized under the laws of Delaware. Universal-Polygram was (and continues to be) facilitating and engaged in, among other things, the business of publishing, administering, distributing, licensing, administering displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting musical works controlled by Co-Defendant Universal Publishing and/or Co-Defendant Universal Publishing AB, including the Infringing Work. Universal-Polygram has caused itself to be publicly indicated as the "Copyright Manager" of Universal Publishing AB for purposes of a publishing interest that Universal Publishing AB claims to control in the Infringing Work. Universal-Polygram has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

24.     Defendant Warner-Tamerlane is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Warner-Tamerlane was (and continues to be) engaged in, among other things, the business of publishing, administering, distributing, licensing, displaying, marketing, promoting, reproducing, copying, and/or otherwise exploiting the Infringing Work. Warner-Tamerlane has caused itself to be publicly credited as one of the entities or persons that control a publishing interest

in the Infringing Work. Warner-Tamerlane has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

25.    Defendant WMG is a major global music corporation organized under the laws of Delaware with its principal offices in New York, New York. WMG is the parent company of Co-Defendant Warner-Tamerlane, and WMG has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited to the public. WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

26.    Upon information and belief, Defendant Lustig is an individual who resides in Canada. Among other ventures, Lustig is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Lustig has caused the Infringing Work to be created, widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Upon information and belief, Lustig has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned and upon information and belief, Defendant Lustig, in his capacity as music producer and/or collaborating songwriter of Defendants' Infringing Work, individually and directly participated with Co-Defendants Drake, Astrop, Blackmon, Zastenker, and Klahr in identifying and implementing musical samplings, lyrics,

10

interpolations, and other elements involved in the songwriting and production of Defendants' Infringing Work, including but not limited to the unauthorized use and direct copying therein of portions taken and sampled from Obrafour's Copyrighted Work, "Oye Ohene (Remix)."

27.     Upon information and belief, Defendant Astrop is an individual who resides in the United Kingdom. Among other ventures, Astrop is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Astrop has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Upon information and belief, Astrop has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned and upon information and belief, Defendant Astrop, in his capacity as music producer and/or collaborating songwriter of Defendants' Infringing Work, individually and directly participated with Co-Defendants Drake, Lustig, Blackmon, Zastenker, and Klahr in identifying and implementing musical samplings, lyrics, interpolations, and other elements involved in the songwriting and production of Defendants' Infringing Work, including but not limited to the unauthorized use and direct copying therein of portions taken and sampled from Obrafour's Copyrighted Work, "Oye Ohene (Remix)."

28.     Upon information and belief, Defendant Blackmon is an individual who resides in the State of ~~Hawaii~~Nevada. Among other ventures, Blackmon is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business

in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Blackmon has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Upon information and belief, Blackmon has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned and upon information and belief, Defendant Blackmon, in his capacity as music producer and/or collaborating songwriter of Defendants' Infringing Work, individually and directly participated with Co-Defendants Drake, Lustig, Astrop, Zastenker, and Klahr in identifying and implementing musical samplings, lyrics, interpolations, and other elements involved in the songwriting and production of Defendants' Infringing Work, including but not limited to the unauthorized use and direct copying therein of portions taken and sampled from Obrafour's Copyrighted Work, "Oye Ohene (Remix)."

29. Upon information and belief, Defendant Klahr is an individual who resides in Sweden. Among other ventures, Klahr is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Klahr has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Upon information and belief, Klahr has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned and upon information and belief, Defendant Klahr, in his capacity as music producer and/or collaborating songwriter of Defendants' Infringing Work, individually and directly participated with Co-Defendants Drake, Lustig, Astrop, Zastenker, and

Blackmon in identifying and implementing musical samplings, lyrics, interpolations, and other elements involved in the songwriting and production of Defendants' Infringing Work, including but not limited to the unauthorized use and direct copying therein of portions taken and sampled from Obrafour's Copyrighted Work, "Oye Ohene (Remix)."

30.     Upon information and belief, Defendant Zastenker is an individual who resides in Sweden. Among other ventures, Zastenker is a music producer who is credited as a writer of the Infringing Work, whose composition and/or performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, in addition to causing the Infringing Work to be created, Zastenker has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied, and/or otherwise exploited. Upon information and belief, Zastenker has derived substantial revenues and/or profits from the exploitation of the Infringing Work. Furthermore, at all relevant times herein mentioned and upon information and belief, Defendant Zastenker, in his capacity as music producer and/or collaborating songwriter of Defendants' Infringing Work, individually and directly participated with Co-Defendants Drake, Lustig, Astrop, Blackmon, and Klahr in identifying and implementing musical samplings, lyrics, interpolations, and other elements involved in the songwriting and production of Defendants' Infringing Work, including but not limited to the unauthorized use and direct copying therein of portions taken and sampled from Obrafour's Copyrighted Work, "Oye Ohene (Remix)."

**FACTUAL ALLEGATIONS**

I.     **Plaintiff and his Copyrighted Work**

31.     Obrafour has enjoyed a successful and celebrated career engaged in, among other things, the business of writing, producing, creating, recording, performing, and releasing music internationally under the stage name "Obrafour." Obrafour's professional career in that regard began when he released his debut album entitled "Pae Mu Ka" in 1999 to widespread acclaim. Widely regarded as one of the most notable and influential musicians in the history of Ghanian hip-hop music and culture, Obrafour has released six full-length albums and over thirteen singles since 1999, and has received numerous accolades, awards, and nominations for his work.

32.     One of the albums created and released by Obrafour is entitled "Nte Tee Pa," which was initially published and released for sale and distribution on the Ghanian market by Obrafour on compact disc on or about June 23, 2003. One of the songs included and released on the album Nte Tee Pa is the Copyrighted Work, entitled "Oye Ohene (Remix)," which Obrafour wrote, created, and recorded in 2003. Nte Tee Pa was well-received, and among other accolades, won the award for "Best Album of the Year" at the 2004 Ghana Music Awards UK. Moreover, the Copyrighted Work has remained one of the most popular songs on Nte Tee Pa, and one of the most popular songs in Obrafour's overall music catalogue.

33.     ~~In connection~~Indeed, "Oye Ohene (Remix)," the Copyrighted Work, is widely regarded as one of the most important, iconic, and celebrated songs to ever be released in the Ghanian hip-hop culture, with ~~his release of Nte Tee Pa,~~many in the public specifically ranking "Oye Ohene (Remix)" as among the top Ghanian song of all time. Annexed hereto as **EXHIBIT B** are true and accurate screenshots capturing posts made by members of the public on the social media platform formerly known as Twitter that exemplify the widespread public acclaim for and notoriety of the Copyrighted Work. Some of these posts are shown below:

← **Post**



**Clone** 🔥
@ThatDudeStev

With all due respect "Oye Ohene Remix"

> 🌍 **Rayan Mount** @RayanMount · Dec 8, 2021
> The best remix ever in Ghana is "Jacket remix" by Praye and to some
> extent "Ringtone remix". Burna boy should come and take his verse
> back to Enugu. Kwasia
> #SecondSermonRemix

6:42 AM · Dec 8, 2021



**Your Quiz Master** @NGO_gh · Sep 4
The greatest Ghanaian Remix of all time.

> **HIGHLIFE lives ON** @GyapKay · Sep 4
> Which banger was this?

○ 5          ⟲          ♡ 3          📊 1.3K          🔖     ⬆️



@ajsarpong forgetti obiaaa!
When you hear "Kill the cat blood, Kill the Cat.." you wouldn't need to be told. Oye Ohene Rmx is Da BOMB!!! @iamobrafour and @BardManTinny created a timeless piece.
It's simply Magical!! @Citi973

7:35 AM · Aug 5, 2022

Kay
@van_sevenss

Obrafour "Oye Ohene remix" ft. Tinny is the greatest of all remixes in Ghana. 🔥

4:43 PM · Dec 29, 2020

Post your reply    Reply

SPLIT-DEALS
@Aboagye_Baafi

#NW the best REMIX eva made in GH. Obrafour Oye ohene (remix) youtube.com/watch?v=onzgLs.... i love this

10:58 AM · Mar 12, 2012

33.34. Since the creation of the Copyrighted Work (i.e., "Oye Ohene (Remix)") in 2003,

Obrafour registered his has been the sole and exclusive owner of the copyrights in and to the

16

Copyrighted Work ~~"Oye Ohene (Remix)"~~ under Ghanian ~~copyright~~ law ~~and procedure.~~. Annexed hereto as **EXHIBIT ~~B~~C** is an official Confirmation of Copyright letter, dated October 18, 2022, from GHAMRO (Ghana Music Rights Organization), the agency responsible for administering and enforcing copyright and copyright law in Ghana. The letter confirms Obrafour's ~~2003 registration and his~~ status as the ~~duly registered and~~ exclusive owner of the Copyrighted Work under Ghanian law. Furthermore, annexed hereto **EXHIBIT D** is the declaration of GHAMRO's CEO Abraham Adjatey, wherein Mr. Adjatey confirms his understanding, based upon personal knowledge and GHAMRO's records, that Obrafour is the owner of Ghanian copyrights in and to the Copyrighted Work.

35. ~~In addition to registering his exclusive copyright in and to the Copyrighted Work in Ghana~~Furthermore, Obrafour ~~also~~ registered his ~~exclusive~~ copyright in and to the Copyrighted Work in the United States. Obrafour did so in accordance with American copyright law and procedure, as confirmed in the United States Copyright Office Certificate of Registration, effective September 6, 2022, annexed hereto as **~~EXHIBIT A.~~Exhibit A**.

~~34.~~36. Of particular importance to the Copyrighted Work is its intro, wherein a male voice using a distinct tone, cadence, and accent is heard energetically repeating the following phrase: "Killer cut, blood, killer cut." This intro incorporates the use of slang terms and may be understood as approximately translating to a phrase expressing the idea, "Great song, brother, great song." Recorded introductions of this kind—also known as "signatures" or "drops"—were and remain an important and notable feature of songs within the Ghanaian *hiplife* genre. Obrafour's music in particular is known for its role in pioneering the use and proliferation of such "signatures" or "drops" in *hiplife* music, and the appearance of such intro or "drops" throughout his released music accordingly developed into a popular and notable aspect of the songs he has released. The intro heard at the

beginning of the Copyrighted Work has been a particularly popular and noted example of these intros or "drops" heard in Obrafour's songs. It is an intro or "drop" that is unique solely to "Oye Ohene (Remix)," was created for specific use on "Oye Ohene (Remix)," is not heard or used on any other works, and has been so enduringly popular within the Ghanaian market and Ghanaian *hiplife* culture, and those fans of the genre worldwide, that it has become effectively synonymous with "Oye Ohene (Remix)" as an overall iconic Ghanaian song—with the intro itself having developed widespread iconic or cult status within modern Ghanaian music culture. Annexed hereto as **EXHIBIT E** are true and accurate screenshots of social media posts by members of the public on the social media platform formerly known as Twitter—including posts made well before the infringement by Defendants— which exemplify and highlight how members of the public specifically associate the intro with "Oye Ohene (Remix)" as an overall song, and how members of the public have described the intro to "Oye Ohene (Remix)" as, among other things, an "*ICONIC*" and "*timeless*" intro that "*just causes a frenzy everywhere*" when heard. *See* **Exhibit E** (emphasis added). In short, the intro to Obrafour's "Oye Ohene (Remix)" has endured as one of its most significant, notable, recognizable, popular, acclaimed, and widely venerated aspects as an overall song, becoming an iconic and unique intro in contemporary Ghanaian music and hip-hop culture in the process.

## II.    Defendants' Infringing Conduct

35.37.    On June 8, 2022, Obrafour received an email from an individual named Deborah Mannis-Gardner ("Mannis-Gardner"), which bore the following email subject line:

> **Drake "Darkness" (working title)" contains samples from "Oye Ohene" Ft Tinny written and performed by Obrafour.**

A true and correct copy of this June 8, 2022 email from Mannis-Gardner to Obrafour (the "June 8, 2022 Clearance Email") is annexed hereto as **EXHIBIT C.F.**

36.~~36.~~38.  In the June 8, 2022 Clearance Email, Mannis-Gardner wrote to Obrafour that she was "**currently working on a *sample clearance* for *Republic* recording artist *Drake*.**" ~~Ex. C.~~**Exhibit F** (emphasis added). Mannis-Gardner further wrote that "**Drake *has used samples* from the above referenced song,**" identifying the song in which Drake "*has used*" such "*samples*" as a song entitled "**Darkness (working title).**" *Id.* (emphasis added). Continuing, Mannis-Gardner wrote to Obrafour that "***we* are seeking *consent* for both the master rights and publishing rights,**" a statement she immediately followed with a hyperlink that, when clicked, automatically directs one to a ~~streaming version~~stream of ~~the~~Obrafour's Copyrighted Work that has been available on Spotify since in or about 2018. *See id.* (emphasis added). After linking to ~~the Copyright~~Obrafour's Copyrighted Work on Spotify, Mannis-Gardner further wrote that~~.~~ "**the rights that we are looking to secure include the *right to use* this sample in our *new composition* in all audio configurations, now known or hereinafter devised, throughout the world, in perpetuity including music video rights and digital downloads and ring tones/ring tunes.**" *Id.* (emphasis added).

37.~~37.~~39.  Mannis-Gardner sent the June 8, 2022 Clearance Email at the behest and on behalf of the Defendants, as an agent retained by Defendants for purposes of obtaining sample clearances. Upon information and belief, the Drake song she identified therein as "Darkness (working title)"—which she ~~stated contained~~identified as containing a sample of ~~the~~Obrafour's Copyrighted Work—is the song that was ultimately released with the song title "Calling My Name," *i.e.*, the Infringing Work.

38.~~38.~~40.  On June 13, 2022, Obrafour had not yet responded to the June 8, 2022 Clearance Email, and Mannis-Gardner sent Obrafour a follow-up email simply stating, "**Hi confirming you received this email thanks [sic]**~~".~~]" (the "June 13, 2022 Clearance Email"). The June 13, 2022 Clearance Email is annexed hereto as **EXHIBIT ~~D~~G**.

39.41.  On June 17, 2022, a fourteen-song studio album entitled "Honestly, Nevermind" by Drake was released by Defendants Drake, OVO, Republic, and Universal, only hours after Drake and OVO announced the album on social media. In doing so, Drake, OVO, Republic, and Universal released "Honestly, Nevermind" pursuant to an increasingly prevalent 'surprise' model for high-profile commercial album releases, whereby an album is suddenly released by 'surprise'—*i.e.*, either with little or no notice or promotion to the consuming public. This 'surprise' release model stands in contrast to the traditional model for album releases, which typically involves a period of promotion and marketing—or a "promo run"—leading up to the album's official, announced release date. The 'surprise' album release approach is designed to, among other things, create a sense of excitement and urgency among fans, who may feel compelled to buy or stream the album immediately in order to be among the first to hear it.

42.    Obrafour had not yet responded to the June 8, 2022 Clearance Email or the follow-up June 13, 2022 Clearance Email at the point when Drake's "Honestly, Nevermind" album was released on June 17, 2022. Nonetheless, the Infringing Work is one of the songs appearing on the "Honestly, Nevermind" album, as released to the world by 'surprise' on June 17, 2022.Obrafour and the world by 'surprise' on June 17, 2022. Essentially, Defendants—while acknowledging and admitting the existence of Obrafour's rights in and to the Copyrighted Work in the clearance emails— did not bother waiting to properly obtain a license or any other form of permission from Obrafour to use his Copyrighted Work before using it.

43.    Further evincing Defendants' blatant disregard for Obrafour's rights in and to the Copyrighted Work and their ongoing knowledge of their unauthorized use of the Copyrighted Work, on October 20, 2022 Mannis-Gardner sent Obrafour a third email (the "October 20, 2022 Email")

stating: "Dear Sir: I have a interested in sampling one of your songs. Do you have a US representative or may I do this deal with you?" The October 20, 2022 Clearance Email is annexed hereto as **EXHIBIT H**.

40.44. However, by the point of this October 20, 2022 email, the Infringing Work had already been created, released, published, distributed, disseminated, and exploited on a massive scale worldwide, and the time to secure a proper license from Obrafour *before* using and sampling his Copyrighted Work had passed.

41.45. The Infringing Work appears on "Honestly, Nevermind" as the song entitled "Calling My Name," which prominently features an audio phraseportion taken directly from the sound recording of the Copyrighted Work., Obrafour's "Oye Ohene (Remix)". Specifically, the Infringing Work directly incorporates a vocal phrase that is audible atcopies, contains, and samples the immediate outsetaudio of the sound recording of the iconic and popular intro to Obrafour's Copyrighted Work, as described in Paragraph 36 of the foregoing (the "Sampled PhrasePiece"). Upon information and belief, the Infringing Work had never been released, performed, displayed, announced, or otherwise made publicly listenable or accessible prior to the 'surprise' release of the "Honestly, Nevermind" album.

42. In the Sampled Phrase from the Copyrighted Work, a male voice with a distinct tone and accent is heard energetically repeating the following phrase: "Killer cut, blood, killer cut." The phrase incorporates use of slang terms universally associated with hip-hop culture. In this lexicon, the Sampled Phrase can be understood as approximately saying, "Great song, brother, great song."[1]

---

[1] "Killer," used in this context, means "great." A "cut" is a colloquial way of referring to a song or piece of music, deriving from the analogue era of music recording where music was primarily recorded to reels of tape that would be cut. "Blood" is a term of endearment or affection meaning "brother."

46.    The copying of the Sampled ~~Phrase~~Piece in the Infringing Work is so direct in nature that the audio of the Sampled ~~Phrase~~Piece, as heard in the Infringing Work, contains ~~little or~~ no audible manipulation, processing, or other alteration to its original character as heard in Obrafour's Copyrighted Work. Furthermore, the copying of the Sampled Piece in the Infringing Work is so direct in nature that the audio of the Sampled Piece—as heard in the ~~Copyrighted Work.~~Infringing Work— is not even accompanied by any new or changed instrumentation, or any other sonic elements added by Defendants whatsoever. In other words, the audio of the Sampled Piece used without permission and sampled by Defendants in their Infringing Work is musically and sonically indistinguishable— indeed, all but *identical*—to the same audio portion originally heard in and lifted from the distinct, recognizable, and widely popular intro to Obrafour's "Oye Ohene (Remix)." This lack of audible sonic or musical alteration to the audio of the Sampled ~~Phrase heard in the Infringing Work~~Piece is notable to the extent that it is ~~generally~~ atypical for a song to use and sample audio from another song without at least some audible manipulation, processing, inclusion of new accompanying music or sounds, or other alteration to the basic character, speed, and/or pitch of the sampled audio.

47.    In sum, the Defendants simply lifted and took the audio from Obrafour's iconic, recognizable, distinct, unique, and widely popular intro to "Oye Ohene (Remix)" and dropped it into their Infringing Work. Furthermore, in a notably straightforward and uncreative example of direct sampling, the audio in question from Obrafour's Copyrighted Work appears sampled without permission in the Defendants' Infringing Work (1) unaltered whatsoever from its original musical or sonic character in Obrafour's Copyrighted Work; (2) plainly recognizable and identifiable to average lay listeners as audio lifted directly from Obrafour's Copyrighted Work; and (3) indistinguishable to

the average lay listener from the original corresponding audio portion heard in Obrafour's Copyrighted Work.

43.48.  Indeed, the unauthorized copying of the Sampled Piece in the Infringing Work is so direct—and the Sampled Piece is so widely recognized and associated with Obrafour's Copyrighted Work—that Obrafour was first made aware of the unauthorized use of the Sampled Piece via a flood of articles and posts made online *the very day* of the Infringing Work's release, wherein innumerable members of the public familiar with the Copyrighted Work pointed out that its intro had been clearly and audibly copied by Drake in the Infringing Work. Annexed hereto as **EXHIBIT I** are true and accurate examples of such articles and posts made online by members of the public on or about the day that the Infringing Work was released, wherein members of the public identify the intro from the Copyrighted Work as having been directly, audibly copied in the Infringing Work, with some even urging Obrafour to seek legal recourse on that basis.

44.49.  Upon release, the "Honestly, Nevermind" album was noted for its adoption of sonics and musical styles associated with the genres of dance, house, and club music, which represented a sharp stylistic departure from the hip-hop and R&B sonics that dominated previous Drake releases. As such, the album has garnered widespread critical acclaim.

45.50.  For example, the New York Times's Jon Caramanica wrote, "A small marvel of bodily exuberance – appealingly weightless, escapist and zealously free. An album of entrancing club music, it's a pointed evolution toward a new era for one of music's most influential stars." Jon Caramanica, *Drake Rebuilt Hip-Hop in His Image. Now He Wants You to Dance*, N.Y. Times, (Jun. 19, 2022).[2] Variety's Alex Swhear wrote, "As a standalone Drake album, it's deeply refreshing, and a dose of

---

[2]  Accessible at: https://www.nytimes.com/2022/06/19/arts/music/drake-honestly-nevermind-review.html . Accessible at: https://www.nytimes.com/2022/06/19/arts/music/drake-honestly-nevermind-review.html.

vibrant pop likely to reverberate through the remainder of the summer." Alex Swhear, *Drake Comes Back From Dreary 'Lover Boy' With Refreshing Dance Music of 'Honestly, Nevermind': Album Review*, Variety, (Jun. 17, 2022).[3] From a commercial standpoint, "Honestly, Nevermind" and all of its constituent songs did indeed "reverberate through the remainder of the summer."

46.51.  Upon its release on June 17, 2022, "Honestly, Nevermind" instantly debuted atop numerous international charts, including the U.S. Billboard, Billboard 200 chart. It also debuted in the top-ten on numerous other charts internationally. "Honestly, Nevermind" generated approximately 250.23 million on-demand music streams in its first week alone. By the close of 2022, "Honestly, Nevermind" had occupied a peak position of number one on no less than eight separate weekly charts throughout the globe, and had occupied peak positions of number two or three on no less than eleven separate weekly charts throughout the globe. "Honestly, Nevermind" ended 2022 as the top-charting album of the year on the Billboard U.S. Top Dance/Electronic Albums chart.

47.52.  In the mere 304537 total days that have elapsed since "Honestly, Nevermind" was released, "Honestly, Nevermind" has, among other things, generated over one billion streams on Spotify, and has never left the worldwide top-fifty albums garnering the most daily streams on Apple Music.

48.53.  As part of the massive international commercial success generated by the "Honestly, Nevermind" album, the Infringing Work has seen immense commercial success in its own right. Specifically, upon the "Honestly, Nevermind" album's debut, the Infringing Work immediately

---

[3] Accessible at: https://variety.com/2022/music/album-reviews/drake-honestly-nevermind-album-review-1235297499/. Accessible at: https://variety.com/2022/music/album-reviews/drake-honestly-nevermind-album-review-1235297499/.

charted as a top single appearing on numerous charts associated with numerous markets throughout the globe.

49.54.  For instance, the Infringing Work remained in the top twenty-five songs appearing on the weekly USA Singles Top 40 chart for a period of eight consecutive weeks following its debut, at one point occupying a peak position as the number twelve top weekly single in the U.S. Additionally, the Infringing Work charted on the Canada Top 20 weekly singles chart at a peak position of fourteen. In total, the Infringing Work has to date spent an aggregate period of twenty-five total weeks appearing on one or more of four separate charts for top-forty singles in multiple markets throughout the globe.

50.55.  To date, over the mere 304537 days that have elapsed since the Infringing Work was released, the Infringing Work has already been streamed over 4.18 million times on YouTube, streamed over 47,442,16058,806,159 times on Spotify, and streamed tens of millions of times on Apple Music.

56.  In addition to the Infringing Work being massively popular on major music distribution and streaming platforms worldwide, the Infringing Work's unauthorized use of the Sampled Piece has been, in particular, a widely popular and noted aspect of the Infringing Work. For instance, after the release of the Infringing Work, major international celebrities and musicians other than Drake made various posts on social media and elsewhere where they specifically sing along to the "Killer cut, blood, killer cut, blood" Sampled Piece. Taking just one illustrative example of this phenomenon, annexed hereto as **EXHIBIT J** is a video posted on social media by major, iconic global celebrities and musicians Alicia Keys and Swizz Beats. In the video, Keys and Swizz Beats are seen taking a video of themselves listening to the Infringing Work and singing the Sampled Piece: "Killer cut, blood, killer cut, blood."

51.57.  In addition to generating enormous sums of global streams and sales across numerous platforms and garnering widespread popularity for its use of the unauthorized Sampled Piece, the Infringing Work has, also been exploited by the Defendants via other means, including live performance.

52.58.  Though the exact extent to which Defendants participated in live performances of the Infringing Work may not be fully ascertainable by Obrafour until discovery in this action is complete, the Infringing Work has, upon information and belief, been incorporated and performed live during no less than six fifty-five live concerts given by Drake over the 304 537-day period that has elapsed between the Infringing Work's release. Upon information and belief, each of these six fifty-five live performances of the Infringing Work specifically included and consisted of unauthorized uses of the Sampled Phrase Piece from Obrafour's Copyrighted Work.

53.59.  The chart below delineates the six fifty-five live concerts during which Defendants have caused the Infringing Work to be publicly performed, disseminated, and exploited.

| Concert | Date and Location |
|---|---|
| It's All a Blur Tour | October 7, 2023<br>Scotiabank Arena, Toronto, ON |
| It's All a Blur Tour | October 6, 2023<br>Scotiabank Arena, Toronto, ON |
| It's All a Blur Tour | September 29, 2023<br>Kaseya Center, Miami, FL, USA |
| It's All a Blur Tour | September 28, 2023<br>Kaseya Center, Miami, FL, USA |
| It's All a Blur Tour | September 26, 2023 |

| | |
|---|---|
| | State Farm Arena, Atlanta, GA, USA |
| It's All a Blur Tour | September 25, 2023<br>State Farm Arena, Atlanta, GA, USA |
| It's All a Blur Tour | September 23, 2023<br>Spectrum Center, Charlotte, NC, USA |
| It's All a Blur Tour | September 22, 2023<br>Spectrum Center, Charlotte, NC, USA |
| It's All a Blur Tour | September 18, 2023<br>Toyota Center, Houston, TX, USA |
| It's All a Blur Tour | September 17, 2023<br>Toyota Center, Houston, TX, USA |
| It's All a Blur Tour | September 15, 2023<br>American Airlines Center, Dallas, TX, USA |
| It's All a Blur Tour | September 14, 2023<br>American Airlines Center, Dallas, TX, USA |
| It's All a Blur Tour | September 12, 2023<br>Moody Center, Austin, TX, USA |
| It's All a Blur Tour | September 11, 2023<br>Moody Center, Austin, TX, USA |
| It's All a Blur Tour | September 6, 2023<br>Desert Diamond Arena, Glendale, AZ, USA |
| It's All a Blur Tour | September 5, 2023 |

| | |
|---|---|
| | Desert Diamond Arena, Glendale, AZ, USA |
| It's All a Blur Tour | September 2, 2023<br>T-Mobile Arena, Las Vegas, NV, USA |
| It's All a Blur Tour | September 1, 2023<br>T-Mobile Arena, Las Vegas, NV, USA |
| It's All a Blur Tour | August 30, 2023<br>Rogers Arena, Vancouver, BC |
| It's All a Blur Tour | August 29, 2023<br>Rogers Arena, Vancouver, BC |
| It's All a Blur Tour | August 26, 2023<br>Climate Pledge Arena, Seattle, WA, USA |
| It's All a Blur Tour | August 25, 2023<br>Climate Pledge Arena, Seattle, WA, USA |
| It's All a Blur Tour | August 22, 2023<br>Crypto.com Arena, Los Angeles, CA, USA |
| It's All a Blur Tour | August 21, 2023<br>Crypto.com Arena, Los Angeles, CA, USA |
| It's All a Blur Tour | August 19, 2023<br>Chase Center, San Francisco, CA, USA |
| It's All a Blur Tour | August 18, 2023<br>Chase Center, San Francisco, CA, USA |
| It's All a Blur Tour | August 16, 2023 |

| | |
|---|---|
| | Kia Forum, Inglewood, CA, USA |
| It's All a Blur Tour | August 15, 2023<br>Kia Forum, Inglewood, CA, USA |
| It's All a Blur Tour | August 13, 2023<br>Kia Forum, Inglewood, CA, USA |
| It's All a Blur Tour | August 12, 2023<br>Kia Forum, Inglewood, CA, USA |
| It's All a Blur Tour | August 4, 2023<br>Fiserv Forum, Milwaukee, WI, USA |
| It's All a Blur Tour | August 1, 2023<br>Wells Fargo Center, Philadelphia, PA, USA |
| It's All a Blur Tour | July 31, 2023<br>Wells Fargo Center, Philadelphia, PA, USA |
| It's All a Blur Tour | July 29, 2023<br>Capital One Arena, Washington, DC, USA |
| It's All a Blur Tour | July 28, 2023<br>Capital One Arena, Washington, DC, USA |
| It's All a Blur Tour | July 26, 2023<br>Madison Square Garden, NY, NY, USA |
| It's All a Blur Tour | July 25, 2023<br>Madison Square Garden, NY, NY, USA |
| It's All a Blur Tour | July 23, 2023 |

| | |
|---|---|
| | Madison Square Garden, NY, NY, USA |
| It's All a Blur Tour | July 21, 2023<br>Barclays Center, Brooklyn, NY, USA |
| It's All a Blur Tour | July 20, 2023<br>Barclays Center, Brooklyn, NY, USA |
| It's All a Blur Tour | July 18, 2023<br>Barclays Center, Brooklyn, NY, USA |
| It's All a Blur Tour | July 17, 2023<br>Barclays Center, Brooklyn, NY, USA |
| It's All a Blur Tour | July 15, 2023<br>Centre Bell, Montreal, QC |
| It's All a Blur Tour | July 14, 2023<br>Centre Bell, Montreal, QC |
| It's All a Blur Tour | July 11, 2023<br>TD Garden, Boston, MA, USA |
| It's All a Blur Tour | July 9, 2023<br>Little Caesars Arena, Detroit, MI, USA |
| It's All a Blur Tour | July 8, 2023<br>Little Caesars Arena, Detroit, MI, USA |
| It's All a Blur Tour | July 6, 2023<br>United Center, Chicago, IL, USA |
| It's All a Blur Tour | July 5, 2023 |

| | United Center, Chicago, IL, USA |
|---|---|
| Estéreo Picnic Colombia 2023 | March 24, 2023<br>Centro de Eventos Briceño 18, Briceño, Colombia |
| Lollapalooza Chile 2023 | March 18, 2023<br>Parque Bicentenario de Cerrillos, Santiago, Chile |
| Lollapalooza Argentina 2023 | March 17, 2023<br>Hipódromo de San Isidro, San Isidro, Argentina |
| Drake at the Apollo Theater | January 22, 2023<br>Apollo Theater, New York, NY, USA |
| Drake at the Apollo Theater | January 21, 2023<br>Apollo Theater, New York, NY, USA |
| October World Weekend 2022 | August 6, 2022<br>Budweiser Stage, Toronto, ON, Canada |

54.60.  It is not yet known to Obrafour precisely how many concert tickets were sold in connection with the above six fifty-five concerts, or how much gross revenue was generated, as the box office data is not publicly available. However, as the parties who possess and/or control and/or administrate the writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues, profits, and benefits derived from the concerts, particularly in light of the fact that Drake was the headlining performance at each of the concerts, the concerts commanded a significant ticket price, and were sold out or near capacity.  Moreover, as captured in the true and accurate screenshot annexed hereto as **EXHIBIT K**, to date the Infringing Work appears posted on Drake's YouTube channel along with hyperlinks for purchase of events tickets to upcoming

performances by Drake. Thereby, Defendants use the Infringing Work as a means for advertising and promoting further live performances by Drake.

61.     Moreover, underscoring the import given by Drake and the other Defendants to their unauthorized use of the Sampled Piece, during the live performances of the Infringing Work set forth above, Drake has specifically chosen to abandon his *own* introductory musical portion of his Infringing Work as initially released. Drake has opted to start his live performances of the Infringing Work with the unauthorized Sampled Piece as his own introduction. More specifically, the Infringing Work as originally released on streaming platforms was effectively a two-part song from a musical standpoint, separated by two separate instrumentals (or "beats") used to accompany the former and latter parts of the song respectively. In this originally released, two-part version of the Defendants' Infringing Work, the Sampled Piece is heard in between the former and latter instrumental parts as an abrupt inflection point to transition between the former instrumental part of the song to the latter.

62.     Further, in Drake's live performances, he has chosen to abandon the initial part of his Infringing Work and has chosen to revise and rearrange it as a new work. This reconfiguration has only one instrumental and musical part and prominently begins with the Sampled Piece as the live performance version's introduction. In doing so, over the course of at least fifty-five live performances held before audiences of hundreds of thousands of people, Drake and the Defendants have created a separate live performance version of the Infringing Work in which Drake has gone so far as misappropriating *Obrafour's* iconic intro to *Obrafour's* Copyrighted Work as the intro to Drake's live performance version of the Infringing Work. Annexed hereto as **EXHIBIT L** are videos from several live performances by Drake that depict and exemplify this live performance version of the Infringing Work that uses *Obrafour's* intro as the intro to Drake's song.

63.     In addition to the separate live performance versions and rearrangements of the Infringing Work described in Paragraph 62 above, Defendant OVO, on its official OVO Sound YouTube Channel, has posted a YouTube "short" music video for the Infringing Work, with the video itself entitled "Calling My Name" and prominently featuring the unauthorized Sampled Piece audible right at the beginning of this short music video—which is also itself an infringing derivative work of the Infringing Work.[4] Annexed hereto as **EXHIBIT M** is a video file truly and accurately depicting the "Calling My Name" video in question, as posted by the official OVO Sound YouTube channel (the "Official OVO Sound 'Calling My Name' Audiovisual Work"). Among other things, this Official OVO Sound 'Calling My Name' Audiovisual Work depicts what appears to be professionally shot and edited footage of Defendant Drake and others partying and drinking champagne in a lavish nightclub setting, donning large amounts of diamond jewelry, and dancing amongst individuals swinging around what appears to be undergarments in their hands. Accompanying and synchronized to this footage is a song derivative of and based upon the Infringing Work, which, among other things, modifies, rearranges, revises, and deletes substantial aspects of the Infringing Work.

55.64.   Furthermore, Defendants OVO, Republic, Universal, Universal Publishing, Universal Publishing AB, Universal-Polygram, Bremer Music AB, WMG, and Warner-Tamerlane (collectively, the "Label Defendants") have individually and jointly been responsible for the continuing administration, display, reproduction, distribution, performance, sale, marketing, promotion, and/or other exploitation of the Infringing Work and unauthorized use of the Sampled Piece. The Label Defendants' joint and individual infringing conduct in this regard extends, upon information and information and belief, to conduct intended to facilitate aid, abet, and encourage the continuing

---

[4] Accessible at: https://www.youtube.com/shorts/mRgWkAdY0iE.

infringement of Obrafour's full ownership of the copyright in the Copyrighted Work, including, but not limited to, the various examples infringing conduct set forth above.

56.65.  For instance, as just one example of the Label Defendants' role in carrying out and furthering the infringement of Obrafour's copyright in the Copyrighted Work, in order to conceal the existence of a wrongful and unauthorized use of Obrafour's Copyrighted Work, the Label Defendants placed, or caused to be placed, label copy on digital and physical formats of the Infringing Work inaccurately listing Defendants Drake, LustingLustig, Astrop, Blackmon, Klahr Klahr, and Zastenker (collectively, the "Individual Defendants") as sole writers of the Infringing Work; inaccurately listing OVO, Republic, and Universal as sole owners of a valid phonographic copyright that purportedly exists in the Infringing Work; and informing Performing Rights Organizations (PROs)—including ASCAP and BMI—of an inaccurate and incomplete list of songwriters, publishers, and administrators of rights associated with the Infringing Work, omitting Obrafour as a writer or publisher and instead indicating the Individual Defendants as sole writers and the Label Defendants themselves as sole stakeholders, publishers, and/or administrators.

66.     Label Defendants have been responsible for, have publicly promoted, have advertised, and have derived substantial revenues from voluminous performances of the Infringing Work and unauthorized use of the Sampled Piece, including performances by Drake during the "It's All a Blur" Tour. Upon information and belief—based on extensive information, social media postings, and footage publicly available—the Infringing Work was selected and performed live as part of Drake's concert setlist for each and every concert he gave during the "It's All a Blur" Tour. During each of these many live performances of the Infringing Work, the unauthorized Sampled Piece was used and incorporated. Furthermore, upon information and belief, each of the Label Defendants have been

responsible for, assisted with, engaged in, collaborated on, and/or participated in the creative, financial, and contractual aspects and undertakings involved in the contractual creation, production, management, promotion, and distribution of live tour performances and live media performances that have been conducted or performed in connection with the Infringing Work.

67.     Upon information and belief, the Label Defendants have derived substantial revenue from, among other things, the repeated unauthorized use of the Sampled Piece throughout many concerts and performances given incident to the "It's All a Blur" Tour. Moreover, OVO Sound and, upon information and belief, additional Label Defendants have directly caused the publication, distribution, dissemination, advertisement, and promotion of official "It's All a Blur" Tour setlists and other materials related to the "It's All a Blur" Tour that explicitly reference, include, and exploit the Infringing Work. For example, annexed hereto as **EXHIBIT N** is a true and accurate screenshot of a streamable YouTube playlist created and publicly posted by the official OVO Sound YouTube Channel, which is entitled "IT'S ALL A BLUR (Official Updated Setlist)," and which lists and includes a stream of the Infringing Work as posted on Drake's official YouTube Channel.[5]

68.     The Label Defendants' wrongful and infringing conduct has by no means been limited in scope or subject matter to the realm of concerts, live performances, or associated areas. The Label Defendants are also liable for conduct that includes numerous examples of the Label Defendants using their official company social media accounts and pages to affirmatively post and publicly display the Infringing Work, including various types of content that directly incorporates or is derivative of the Infringing Work. For instance, the Official OVO Sound 'Calling My Name' Audiovisual Work

---

[5] Accessible at: https://www.youtube.com/playlist?list=PLNm7i4Wq8cj_xdpRBRrVE-9jBh-y91ksO.

previously described in Paragraph 63 above represents but an illustrative example of such conduct by the Label Defendants presently knowable to Darko.

69.     Notably, the Official OVO Sound 'Calling My Name' Audiovisual Work described in Paragraph 67 above prominently features and uses the Sampled Piece without permission—but it features the Sampled Piece used as the ***intro*** to the song by Drake synchronized to the footage therein. In that regard, the Official OVO Sound 'Calling My Name' Audiovisual Work features unpermitted uses of the Sampled Piece that are different in nature from the unpermitted uses contained in the initially released iteration of the Infringing Work made available by Defendants on music streaming platforms. The latter (*i.e.*, initially released) streaming version of Defendants' Infringing Work does not feature the Sampled Piece used as the intro to the song, nor does it feature the Sampled Piece used in a manner proximate to or relevant to the intro. Indeed, in the originally released iteration of Defendants' Infringing Work, which Defendants made available for streaming and/or purchase throughout music platforms worldwide, the Sampled Piece did not appear until roughly around the midway point of the Infringing Work. As previously described in Paragraph 61 above, Defendants initially used the Sampled Piece in a manner whereby it functioned as a transitionary point breaking up and intervening between the two separate musical parts of the originally released version of Infringing Work, which was created, composed, arranged, recorded, published, dissemination, and otherwise exploited by Defendants as one full song comprised of two distinct former and latter musical/instrumental parts. To that end, the Official OVO Sound 'Calling My Name' Audiovisual Work constitutes but one illustrative example presently knowable to Obrafour of the role OVO has played and continues to play in actively furthering and/or assisting in the unlawful creation, manufacture, production, sale, promotion, public performance, live touring, licensing, marketing,

and/or distribution of the Infringing Work—*and works derivative thereof*—containing Obrafour's Copyrighted Work without permission.

57.70.  The Label Defendants are individually and jointly responsible for the administration and/or distribution of the various streams of revenue derived from conduct that continues to infringe upon Obrafour's full ownership of the copyright in and to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct set forth above.

58.71.  The Individual Defendants, as the parties credited with writing the Infringing Work, have also continuously derived significant financial and professional benefits directly resulting from conduct that continues to infringe upon Obrafour's full ownership of the copyright in and to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct set forth above.

59.72.  As a direct result of the streaming, licensing, sale, derivative streaming/licensing/sale/exploitation, synchronization licensing, live performance, reproduction, marketing, promotion, and/or other exploitation of the Infringing Work, all of the Defendants—as the credited songwriters, performers, copyright owners, publishers, record companies, and/or administrators of the Infringing Work—have wrongfully benefited, and continue to wrongfully benefit, from their wrongful exploitation of the Infringing Work despite the fact that it includes an unauthorized use of Obrafour's Copyrighted Work.

60.73.  Further, pursuant to the takedown policies of Spotify, YouTube, and Apple Music, all of the Defendants have possessed the ability to cause the Infringing Work to be taken down from YouTube, Spotify, and Apple Music on the basis that the Infringing Work violates each platform's terms of services and infringes the rights of others by including the unauthorized use of the

Copyrighted Work. All of the Defendants possess such takedown ability, pursuant to the takedown policies ~~-~~of Spotify, YouTube, and Apple Music, because all of the Defendants are either: (a) parties with registered writing and/or publishing interests in and to the Infringing Work; and/or (b) are major parent record corporations, distribution companies, and/or publishing companies who are responsible for the administration and/or management of the Infringing Work and the registered writing and/or publishing interest therein.

~~61.~~74.  The foregoing sets forth only a portion of Defendants' infringing conduct that has been reasonably discoverable and ascertainable to Obrafour within the ~~mere 304-day~~ period that has elapsed since the Defendants' release of the Infringing Work on June 17, 2022.

~~62.~~75.  As a result of Defendants' conduct described above, Obrafour has been directly damaged, and is continuing to be damaged, by Defendants' willful, unauthorized, and infringing reproduction, publication, promotion, performance, distribution, licensing, public display, sale and/or exploitation of the Copyrighted Work. Defendants continue to engage in infringement, despite acknowledging that they needed to secure rights and authorization from Obrafour in order to use Obrafour's Copyrighted Work, and Defendants never received such authorization. Defendants have never accounted to, credited, or otherwise compensated Obrafour for their unauthorized use of the Copyrighted Work.

**CLAIMS FOR RELIEF**

**FIRST COUNT**
**(DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT**
**AGAINST ALL DEFENDANTS PURSUANT TO 17 U.S.C. § 101, et seq.)**

63.76.  Obrafour repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

64.77.  Obrafour is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work "Oye Ohene (Remix)."

65.78.  The Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Obrafour's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

66.79.  The Defendants did not seek or receive permission to copy and/or incorporate any portion of the Copyrighted Work into the Infringing Work, "Calling My Name."

67.80.  The Defendants' conduct has at all times been knowing, willful, and with complete disregard for Obrafour's rights.

68.81.  As a direct and/or proximate cause of the Defendants' wrongful conduct, Obrafour has been irreparably harmed.

69.82.  The Infringing Work copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work.

70.83.  Specifically, the Infringing Work directly copies distinctive and important vocal elements of the composition and performance embodied in the Copyrighted Work.

71.84.  The central inclusion of the foregoing important vocal elements from the Copyrighted Work in the Infringing Work has greatly enhanced the musical and financial value of the Infringing Work.

72.85.  From the date of the creation of the Infringing Work, all of the Defendants have infringed Obrafour's copyright interest in and to the Copyrighted Work including: (i) by directly copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Work at radio, live concerts, and on film, video, television, and otherwise; (ii) by authorizing and/or playing a role in the facilitation of the reproduction, distribution and sale of records and digital downloads containing the Infringing Work via the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (iii) by substantially copying and participating in the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in, administering, and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through unauthorized uses of the Copyrighted Work in and as part of the Infringing Work, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including via radio, streaming services, concerts, film, video, television, and/or otherwise.

73.86.  Obrafour has received no songwriter credit and no copyright ownership interests in and for any exploitations of the Infringing Work or any of the works associated with the Infringing Work.

74.87.  The infringement by the Defendants has been, and continues to be, willful and knowing.

75.88.  With knowledge, or reason to know, of the infringement and the need to procure authorization from Obrafour for the use of Obrafour's Copyrighted Work, the Defendants have

induced, caused, or materially contributed to the infringing conduct of others with respect to the Copyrighted Work, such that Defendants should be found to be contributorily liable.

76.89.  The Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that the Defendants should be found vicariously liable.

77.90.  The infringement is continuing, as the Infringing Work continues to be sold, licensed, performed, displayed, merchandised, and/or otherwise used and/or exploited by the Defendants or their agents.

78.91.  As a direct and proximate result of the conduct of the Defendants, Obrafour has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, while Defendants have profited from their infringement in an amount of millions of dollars, to be determined at trial.

79.92.  Pursuant to 17 U.S.C. § 504(b), Obrafour is entitled to damages including the substantial profits that the Defendants have derived from the infringement of Obrafour's Copyrighted Work, to be determined at trial.

80.93.  In the alternative, pursuant to 17 U.S.C. § 504(c), Obrafour is entitled to the maximum statutory damages of $150,000 per infringement, to the extent that Defendants' willful and continuing infringement occurred after Obrafour's fully owned copyrights in and to the Copyrighted Work were registered with the U.S. Copyright Office and occurred after the Copyrighted Work had already been published and made widely publicly accessible.

81.94.  Obrafour is entitled to his costs, including reasonably attorneys' fees, pursuant to 17 U.S.C. § 505.

82.95.  Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Obrafour irreparable injury that cannot be fully compensated or measured in monetary terms. Obrafour has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Obrafour is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work, including all infringing works or uses derivative thereof, in all formats, configurations, and/or media.

## RELIEF REQUESTED

**WHEREFORE**, Obrafour respectfully requests that judgment be entered against the Defendants, as follows:

a.      A declaration that Defendants have willfully infringed Obrafour's Copyrighted Work in violation of the Copyright Act;

b.      A declaration that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable;

c.      A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Obrafour's rights protected by the Copyright Act;

d.      An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Defendants, including all profits and damages directly and indirectly arising from exploitation of the Copyrighted Work, domestically and internationally, as well as any and all profits

and damages in the following categories attributable to the infringement, including but not limited

to:

1.      Record sales;
2.      Downloads;
3.      Ringtones;
4.      Ringback tones;
5.      Public performance revenues;
6.      Digital revenue;
7.      Streaming revenue;
8.      Synchronization licensing;
9.      Merchandising;
10.    Public appearances;
11.    Endorsements;
12.    Sponsorships;
13.    Spokesperson work;
14.    Touring revenue;
15.    Advertising revenue;
16.    Appearance fees;
17.    Name and likeness income and increase in value;
18.    Rights of publicity income and increase in value;
19.    Increased value in all Defendants' publishing and/or record company and/or companies;
20.    Increased value of all Defendants' catalogues;
21.    Increased value of music publishing and/or record royalties and rights;
22.    Increased value of social media rights, accounts and value;
23.    Increased goodwill;
24.    Promotional value;
25.    Increased value of royalty rate for record deals;
26.    Increased value in distribution deals, negotiating power and reduction in costs;
27.    Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;
28.    Value of obtaining better terms for record company advances and terms and multi-record deals;
29.    Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants Drake, ~~Lusting~~Lustig, Astrop, Blackmon, Klahr, and Zastenker;
30.    Increased value in negotiating 360 deals with record companies and/or publishers;
31.    Sheet music sales and sheet folio income;
32.    Any and all music publisher income;
33.    Any and all record master income;
34.    Any and all record income;

35. Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

36. Any and all producer royalty income;

37. Any and all arrangement income;

38. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

39. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

40. Any and all income from any society to which any Defendant belongs or joins in the future;

41. Any and all income and/or residuals from SAG-AFTRA;

42. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

43. Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service.

e. In the alternative, an award of statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement that occurred after Obrafour's registration of his copyright with the U.S. Copyright Office;

f. An award of compensatory and special damages, to be determined at trial;

g. An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

h. For pre-judgment and post-judgment interest according to law, as applicable;

i. For damages, in aggregate, in an amount not less than $10,000,000, and/or to be determined at trial; and

j. For such other and further relief as this Court may deem just and proper.

**<u>REQUEST FOR TRIAL BY JURY</u>**

       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.


Dated: New York, New York
          ~~April 18~~December 6, 2023


                        Respectfully submitted,

                        **AIDALA, BERTUNA & KAMINS, P.C.**


                        ~~By: _____~~
                        By:   /s/ Imran H. Ansari, Esq._____
                        Imran H. Ansari, Esq.
                        546 Fifth Avenue, 6th Floor
                        New York, NY 10036
                        T: (212) 486-0011
                        F: (212) 750-8297
                        ~~iansari@aidalalaw.com~~


                        iansari@aidalalaw.com

                        *Attorneys for Plaintiff*